871 P.2d 388

**WESTLAND DEVELOPMENT CO., INC., and Gil E. Cordova, Plaintiffs–Appellees,**

v.

**Kenneth T. ROMERO, Toby Romero, Jesus H. Anaya, John Doe # 1, John Doe # 2, John Doe # 3, and John Doe # 4, Defendants–Appellants.**

No. 13642.

Court of Appeals of New Mexico.

Feb. 3, 1994.

Joseph Goldberg, Freedman, Boyd, Daniels, Peifer, Hollander, Guttmann & Goldberg, P.A., Albuquerque, for plaintiffs-appellees.

David S. Proffit, Albuquerque, for defendants-appellants.

## OPINION

BIVINS, Judge.

Plaintiffs, Westland Development Company and its president, Gil E. Cordova, (the Westland Group), filed suit against Defendants, Kenneth T. Romero, Toby Romero, Jesus Anaya and others (the Romero Group), alleging, among other things, abuse of process and defamation. The individuals making up the Romero Group then filed separate counterclaims also alleging abuse of process. The Westland Group moved for summary judgment on the counterclaims and that motion was granted. During the pendency of this appeal, the Romero Group also filed a motion seeking remand for consideration of a motion for relief from judgment and a motion to compel discovery. We remanded, and the district court also denied those motions. The Romero Group now appeals these decisions. Although denominated as an abuse of process, the Romero Group's counterclaims actually state a cause of action for malicious prosecution which cannot be asserted until termination of the Westland Group's claims. Dismissal without prejudice, therefore, was correct, and we affirm on that basis.

In their brief in chief, the Romero Group advances essentially two reasons why the order granting summary judgment

should be reversed. First, they claim that genuine issues of material fact exist as to the causes of action set forth in their counterclaims both with respect to liability and to damages. Second, the Romero Group contends that the district court erred in refusing to consider newly discovered evidence and in refusing to compel further discovery. Although the order granting summary judgment recites the absence of any issues of material fact, for the reasons that follow we conclude the Romero Group's counterclaims could not be filed prior to termination of the Westland Group's claims. Thus, we affirm dismissal of the counterclaims as a matter of law but for a different reason. An appellate court will affirm a lower court's ruling if right for any reason. *State v. Beachum*, 83 N.M. 526, 527, 494 P.2d 188, 189 (Ct.App. 1972).

The Romero Group based their counterclaims on the grounds of abuse of process. Abuse of process requires (1) the existence of an ulterior motive and (2) an act using process other than that process which would be proper in the regular prosecution of the charge. *Farmers Gin Co. v. Ward*, 73 N.M. 405, 407, 389 P.2d 9, 11 (1964). The Romero Group's counterclaims, however, read more like malicious use of process claims than abuse of process claims. "[M]alicious use of process is the employment of process for its ostensible purpose, but without reasonable or probable cause," and is merely a type of malicious prosecution. *Avco Delta Corp. v. Walker*, 22 Ohio App.2d 61, 65, 51 O.O.2d 122, 124, 258 N.E.2d 254, 257 (1969) (quoting 1 Am.Jur.2d *Abuse of Process* § 2 (1962)).

The effect of labeling a claim as an abuse of process claim instead of a malicious prosecution claim is significant because an abuse of process claim can be brought at the beginning of a suit, for example, as a counterclaim, whereas a malicious prosecution claim cannot be brought until the termination of the proceedings. *See Farmers Gin Co.*, 73 N.M. at 407, 389 P.2d at 11 (abuse of process); *Zamora v. Creamland Dairies, Inc.*, 106 N.M. 628, 632, 747 P.2d 923, 927 (Ct.App. 1987) (malicious prosecution). Examples of

what constitutes an abuse of process include the following:

> [E]xcessive execution on a judgment; attachment on property other than that involved in the litigation or in an excessive amount; oppressive conduct in connection with the arrest of a person or the seizure of property ...; extortion of excessive sums of money....

*Farmers Gin Co.*, 73 N.M. at 407–08, 389 P.2d at 11.

In the Romero Group's counterclaims, they use the proper terminology for making abuse of process claims. For example, they state that "Westland ... had an *ulterior motive* for filing their Complaint" and "[t]he filing of the Complaint ... constitutes a *perversion of Court processes to accomplish ends which the process was not intended by law to accomplish.*" (Emphasis added.) However, the essence of their counterclaims is that "Westland ... knew, or should have known upon the exercise of reasonable diligence, that the factual allegations contained in their Complaint and First Amended Complaint were false" and "without merit in light of the known facts and the applicable law." These allegations are more akin to malicious prosecution than abuse of process. Indeed, in their reply brief, the Romero Group even concedes this when they state: "What is happening with increasing frequency, *and what has occurred in this case*, is that defendants are denominating what is truly a claim for malicious prosecution as one for abuse of process so that it can be filed as a counterclaim." (Emphasis added.)

One court distinguished abuse of process and malicious prosecution by noting that "the latter [malicious prosecution] is concerned with maliciously causing process to issue, while the former [abuse of process] is concerned with the improper use of process after it has been issued." *Avco Delta Corp.*, 258 N.E.2d at 257 (quoting *Abuse of Process*, *supra*, § 2). We determine that the counterclaims, although labeled as abuse of process claims, were really malicious prosecution claims because the counterclaims challenged the Westland Group with "maliciously causing process to issue" rather than "improper

use of process after it [had] been issued." *See id.*

*Richardson v. Rutherford,* 109 N.M. 495, 787 P.2d 414 (1990), a case relied on by the Romero Group, arguably might be read as blurring the line between malicious prosecution and abuse of process because it held that the improper act required for an abuse of process claim could be the filing of the complaint itself and that an improper subsequent act was not required. In *Richardson,* however, the defendants apparently did not claim that the complaint itself was groundless; rather, they alleged that certain aspects of the complaint (as well as the plaintiff's motivation in filing the lawsuit) were improper, including the excessive amount of damages requested, the inordinate number of exhibits attached, and the lack of investigation necessary to identify the extent of the alleged injury. *Id.* at 500–03, 787 P.2d at 419–22. These actions could be considered the "subsequent acts" required to show that the judicial process itself was being abused.

In this case, the Romero Group would like to read *Richardson* broadly to support their abuse of process claim; however, we do not believe our Supreme Court intended to do away with the distinction between abuse of process and malicious prosecution. Other courts have rejected the argument that abuse of process and malicious prosecution are the same. *See Avco Delta Corp.,* 258 N.E.2d at 257–58. There are good policy reasons to retain the distinction between malicious use of process (or malicious prosecution) and abuse of process and for not allowing a malicious prosecution claim to be raised as a counterclaim before the original claim has been heard. To allow such a claim to be heard in the same case in which the original complaint was filed would possibly be confusing to a jury because a jury might decide that because a plaintiff did not win, the complaint lacked probable cause. This result could occur because proving a malicious prosecution claim necessarily focuses on what the plaintiff knew and reasonably could have believed *prior* to filing the complaint; a plaintiff who honestly and in good faith initiates a lawsuit should not be held responsible for what full investigation of the facts and trial

prove to be the situation. *Cf. Zamora,* 106 N.M. at 634–35, 747 P.2d at 929–30 (citizens should not be civilly liable for malicious prosecution because they provided honest, although mistaken or incomplete, information to district attorney, who instituted criminal prosecution). Thus, abuse of process premised on filing a complaint without probable cause could become an automatic counterclaim and, if heard in the same suit as the original claim, be confusing. By maintaining the distinction and forcing claims based on filing a complaint without probable cause to continue to be referred to as malicious prosecution and to await the outcome of the underlying suit prevents such confusion. *Cf. Badger Cab Co. v. Soule,* 171 Wis.2d 754, 492 N.W.2d 375, 378–79 (App.1992) (certain counterclaims not allowed to be raised until after completion of lawsuit because they interfered with attorney-client relationship).

Summary judgment without prejudice, therefore, was proper. We note that this decision does not preclude the Romero Group from bringing malicious prosecution claims at the termination of the proceedings in the event they prevail in the present proceeding.

**IT IS SO ORDERED.**

APODACA and CHAVEZ, JJ., concur.