**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 25, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

APOLONIO HERNANDEZ,

        Plaintiff-Appellee,

v.

JEREMY STORY and JUSTIN
DUNIVAN, in their individual
capacities,

        Defendants-Appellants,

and

CITY OF LAS CRUCES,
NEW MEXICO; DANIEL LOPEZ,

        Defendants.

No. 11-2074
(D.C. No. 2:09-CV-00813-MV-LAM)
(D. N.M.)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **ANDERSON**, and **GORSUCH**, Circuit Judges.

---

This is a case about a drunken brawl and the demands of qualified

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

immunity. Apolonio Hernandez and Miguel Lopez had a knock down, drag out fist fight that left Mr. Lopez in the hospital. Two police officers — Jeremy Story and Justin Dunivan — pursued battery charges against Mr. Hernandez, but ultimately failed to secure a conviction. Mr. Hernandez responded with a lawsuit of his own, alleging (among other things) that the officers had maliciously prosecuted him, in violation of the Fourth and Fourteenth Amendments and actionable under 42 U.S.C. § 1983. When the officers sought qualified immunity, the district court refused and held the officers needed to stand trial for their actions because it is "possible" they may have violated Mr. Hernandez's constitutional rights. Qualified immunity, however, may be abrogated only if the plaintiff presents facts suggesting a violation of clearly established law. Because that much hasn't happened in this case, we are obliged to reverse.

To overcome a claim of qualified immunity, a plaintiff must clear two considerable hurdles. He must show that (1) the defendant violated his federally protected rights, and (2) the infringed rights at issue were clearly established in the law at the time of the allegedly unlawful activity such that "every reasonable official would have understood that what he [was] doing" violated the law. *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080, 2083 (2011) (quotation omitted). On appeal, we have jurisdiction to review (and so take care in this case to discuss) only "abstract issues of law" including "(1) whether the alleged facts, if true, amount to a constitutional violation," — at the first step of the qualified immunity

test — "and (2) whether the alleged constitutional violation was clearly established at the time of the challenged action" — at the second. *Wilkins v. DeReyes*, 528 F.3d 790, 797 (10th Cir. 2008).

Turning to the first qualified immunity question, an essential element any malicious prosecution plaintiff must prove is the lack of probable cause to support the challenged legal action against him. At first blush, it appears the defendant-officers' arrest and prosecution of Mr. Hernandez was amply justified, even if it failed to yield a conviction. The undisputed facts show that the defendant-officers learned from Mr. Lopez or hospital staff that Mr. Hernandez and his sons attacked Mr. Lopez, stomped on his head, bit him, and kicked him; that Mr. Lopez's right eye was completely swollen shut; that his left eye was partially swollen; that his face was bruised and swollen; and that he had bite marks on his arms. All this would appear more than enough to sustain a prosecution for battery in New Mexico. *See* N.M. Stat. Ann. § 30-3-4 (1963) ("Battery is the unlawful, intentional touching or application of force to the person of another, when done in a rude, insolent or angry manner."). The district court itself recognized as much, indicating that at the time of Mr. Hernandez's arrest probable cause *did* exist.

For his part, Mr. Hernandez replies that any probable cause that might've existed at the outset dissipated as the investigation progressed and the officers learned new facts. Indeed, Mr. Hernandez goes so far as to allege that the defendant-officers deliberately overlooked certain newly discovered facts only

-3-

because Mr. Lopez's sons are also police officers. Of course, the existence of probable cause is assessed objectively, without regard one way or the other to the defendants' subjective intentions or hidden motives. *Whren v. United States*, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."). But it is surely the case that probable cause can be *negated* by information allegedly and unlawfully disregarded by the defendant-officers. The presence or absence of probable cause in these circumstances is determined by the objective inquiry of "examining the affidavit [or proceedings] as if the omitted information had been included and inquiring if the affidavit [or proceedings] would still have given rise to probable cause." *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996).

Applying that test, however, it is far from clear that the two newly discovered facts Mr. Hernandez points to were sufficient to undo the preexisting probable cause calculus. First, Mr. Hernandez alleges, the officers eventually learned that Mr. Lopez has a record for dishonesty, drunkenness, and violence when he drinks. Second, Mr. Hernandez says, the officers learned Mr. Lopez lied when he said Mr. Hernandez's *sons* participated in the beating. The first fact, however, goes to Mr. Lopez's character more than to the facts of this particular incident and the second fact does nothing to call into question *Mr. Hernandez's* involvement in the beating. Notably, the district court itself stopped short of holding these alleged facts, if proven, would be sufficient to negate the officers'

-4-

preexisting probable cause, saying instead only that it's *possible* these two facts might have had such an effect. So it is that, even under the district court's own reasoning, this case never cleared qualified immunity's first hurdle. *See Wilkins*, 528 F.3d at 797 (malicious prosecution plaintiff must show at step one that "alleged facts, if true, amount to a constitutional violation").

But an even more fundamental problem exists here and its resolution alone suffices to warrant reversal. Whether or not probable cause was negated by the two facts Mr. Hernandez identifies, it's far from clear that every reasonable officer, untainted by any bias, would have thought so. And that fact — the fact Mr. Hernandez cannot clear qualified immunity's second hurdle — is enough by itself to require us to direct judgment against him.

At qualified immunity's second step, the Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality. The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established." *al-Kidd*, 131 S. Ct. at 2084 (internal citations omitted). Instead, for a court to find that a violation of clearly established law has taken place a "more particularized" inquiry is required. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). To satisfy this standard, "[w]e do not require a case directly on point," but neither may a court deny immunity unless "existing precedent [has] placed the statutory or

-5-

constitutional question *beyond debate.*" *al-Kidd*, 131 S. Ct. at 2083 (emphasis added). And the burden of identifying clearly established law rests with the plaintiff. *Herring v. Keenan*, 218 F.3d 1171, 1175-76 (10th Cir. 2000).

It is one Mr. Hernandez hasn't carried in this case. In his brief before this court, Mr. Hernandez cites only one case at qualified immunity's second step: *Wilkins*, 528 F.3d 790. But *Wilkins* doesn't demonstrate that the lack of probable cause in this case was beyond debate, even in light of the two facts Mr. Hernandez introduces. *Wilkins* speaks only to arrests based on allegedly coerced confessions. *Id.* at 801-02. Neither does the district court's opinion identify any other authority clearly indicating that probable cause was lacking in this case. To the contrary, after equivocating on whether there was a constitutional violation at all in light of Mr. Hernandez's alleged facts (calling it no more than *possible*), the district court rested its second step analysis on the shibboleth that "[t]he law is clearly established that a prosecution must be supported by probable cause." And this is precisely the sort of general proposition the Supreme Court has said courts may not rely on at this point in the qualified immunity analysis. *See al-Kidd*, 131 S. Ct. at 2084.

Simply put, Mr. Hernandez has failed to carry his burden of establishing that his arrest and prosecution *clearly* lacked probable cause under existing law, even assuming the truth of the facts he thinks the defendant-officers overlooked; and neither has the district court identified any authority to cure the problem for

him. This is fatal to Mr. Hernandez's cause and the portion of the district court's judgment denying summary judgment on the grounds of qualified immunity for malicious prosecution is reversed. The case is remanded for resolution of any remaining claims against defendant City of Las Cruces.

Entered for the Court


Neil M. Gorsuch
Circuit Judge

11-2074, Hernandez v. City of Las Cruces

**LUCERO**, J., concurring.

I agree with my colleagues that Hernandez has failed to establish the requisite showing necessary to overcome qualified immunity. Rather than reaching the question of whether the alleged constitutional violation was clearly established, however, I would instead limit our holding to the proposition that there was no constitutional violation.

I write separately because the majority proceeds to unnecessarily reach the second prong of the qualified immunity analysis, and in doing so, interjects dicta about plaintiffs' obligations in this context.

My colleagues acknowledge that Hernandez severely beat Lopez, and that it "appears the defendant-officers' arrest and prosecution of Mr. Lopez was amply justified." (Majority Order 3.) They then proceed to dismantle Hernandez's argument that two newly discovered facts negate the probable cause required for his second arrest. Having revealed the weakness in Hernandez's argument, the majority concludes that "even under the district court's own reasoning, this case never cleared qualified immunity's first hurdle." (Id. at 5.)

I agree with this conclusion. Hernandez admits that he injured Lopez severely enough to warrant a trip to the hospital. Despite the suspect timing of the decision to arrest Hernandez a second time, the injuries inflicted on Lopez

meet the statutory definition of criminal battery.  See N.M. Stat. Ann. § 30-3-4.

Accordingly, as the majority acknowledges, there was probable cause to arrest

Hernandez, and thus no constitutional violation.  Because "we need only find that

the plaintiff[ ] failed either requirement" of the qualified immunity inquiry, this

should be the end of the analysis.  Swanson v. Town of Mountain View, 577 F.3d

1196, 1199 (10th Cir. 2009).

The majority, however, proceeds to examine whether the non-existent

violation contravenes clearly established law.  My colleagues conclude that

Hernandez fails on the second prong of the qualified immunity analysis merely

because he failed to cite analogous case law.  Yet as we have explained, it would

place "an impracticable burden on plaintiffs if we required them to cite a factually

identical case before determining they showed the law was 'clearly established'

and cleared the qualified immunity hurdle."  Clanton v. Cooper, 129 F.3d 1147,

1156-57 (10th Cir. 1997) (quotation omitted).  This is especially true when "the

reasonableness inquiry necessarily turns on the cases' particular facts."  Id. at

1156 (quotation omitted).  Nevertheless, Hernandez's citation to case law

indicating that it "has long been clearly established that knowingly arresting a

defendant without probable cause . . . violates the Fourth Amendment" is deemed

inadequate.  Wilkins v. DeReyes, 528 F.3d 790, 805 (10th Cir. 2008).

Having unanimously concluded that there was no constitutional violation, I consider the decision to reach the second prong of qualified immunity and the ensuing analysis gratuitous in nature.